IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 21-2524

LYNN STARKEY,

Plaintiff/Appellant,

v.

ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS, INC., and
RONCALLI HIGH SCHOOL, INC.,

Defendants/Appellees.

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:19-cv-03153,
The Honorable Richard L. Young, Judge

**AMICUS BRIEF OF INDIANA AND FIFTEEN OTHER STATES
IN SUPPORT OF APPELLEES**

THEODORE E. ROKITA
Attorney General of Indiana

THOMAS M. FISHER
Solicitor General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

*Counsel for Amici States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTEREST OF AMICI STATES ....................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    Church Autonomy Principles Prevent Courts from Wading into Religious
      Affairs, Including Employment Decisions ........................................... 2

II.   The District Court Properly Concluded that Appellant Is a Minister .............. 4

CONCLUSION ................................................................................................... 7

ADDITIONAL COUNSEL ................................................................................ 8

CERTIFICATE OF WORD COUNT ............................................................... 9

CERTIFICATE OF SERVICE .......................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Cannata v. Catholic Diocese of Austin*,
  700 F.3d 169 (5th Cir. 2012) ............................................................. 4

*Conlon v. InterVarsity Christian Fellowship*,
  777 F.3d 829 (6th Cir. 2015) ............................................................. 4

*Demkovich v. St. Andrew the Apostle Parish*,
  3 F.4th 968 (7th Cir. 2021) ............................................................ 1, 4

*Fratello v. Archdiocese of N.Y.*,
  863 F.3d 190 (2d Cir. 2017) ............................................................. 4

*Grussgott v. Milwaukee Jewish Day Sch., Inc.*,
  882 F.3d 655 (7th Cir. 2018) (per curiam) ........................................ 4, 5

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171 (2012) ................................................................. 2, 3, 4

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*,
  344 U.S. 94 (1952) ..................................................................... 2, 6

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
  140 S. Ct. 2049 (2020) ........................................................... 1, 2, 3, 4

*Presbyterian Church v. Hull Church*,
  393 U.S. 440 (1969) ...................................................................... 2

*Serbian E. Orthodox Diocese v. Milivojevich*,
  426 U.S. 696 (1976) ...................................................................... 2

*Sterlinski v. Catholic Bishop of Chi.*,
  934 F.3d 568 (7th Cir. 2019) ....................................................... 3, 4, 5

## INTEREST OF AMICI STATES

The States of Indiana, Alabama, Alaska, Arkansas, Georgia, Idaho, Kansas, Kentucky, Louisiana, Mississippi, Montana, Nebraska, Oklahoma, South Carolina, Utah, and West Virginia respectfully submit this brief in support of Appellees. Amici States have a significant interest in maintaining clear standards for determining when the broad immunity protections of the First Amendment's ministerial exception apply to employment-discrimination claims. Setting clear standards for these determinations assists the States in resolving these disputes. States are asked to step into disputes between religious institutions and their employees through investigation and administrative adjudication of employment-discrimination complaints by state civil rights agencies and adjudication of discrimination lawsuits by state courts. The ministerial exception, when properly applied, helps States navigate their role in these matters under the First Amendment and prevents state entanglement with religious affairs. Because the district court properly applied the ministerial exception in this case, the amici States respectfully urge the Court to affirm.

## SUMMARY OF THE ARGUMENT

The First Amendment protects religious institutions' "independence in matters of faith and doctrine and in closely linked matters of internal government." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020). "The ministerial exception follows naturally from the church autonomy doctrine." *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 975 (7th Cir. 2021).

As Co-Director of Guidance at Roncalli High School, Appellant engaged in the "religious education and formation of students," *Our Lady of Guadalupe*, 140 S. Ct. at 2055, and participated in shaping and furthering the mission of the Catholic school. Appellant is plainly a minister under the doctrine.

## ARGUMENT

### I. Church Autonomy Principles Prevent Courts from Wading into Religious Affairs, Including Employment Decisions

Under the long-established church-autonomy doctrine, religious organizations have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). When the government decides matters of church governance, faith, or doctrine, it "inhibit[s] the free development of religious doctrine and [implicates] secular interests in matters of purely ecclesiastical concern." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710 (1976) (quoting *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969)).

The First Amendment protects the autonomy of religious institutions in several respects, including "internal management decisions that are essential to the institution's central mission." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). For individuals working within a religious institution, "[t]he [ministerial] exception . . . ensures that the authority to select and control who will minister to the faithful . . . is the church's alone." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 194–95 (2012). The two religion clauses

work together to delineate the scope of the government's authority regarding ministers: "The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own." *Id.* at 184.

The Supreme Court in *Hosanna-Tabor* identified four relevant circumstances when determining whether an individual is a minister: (1) "the formal title"; (2) "the substance reflected in that title"; (3) "[the teacher's] own use of that title"; and (4) "the important religious functions she performed for the Church." *Id.* at 192. *Our Lady of Guadalupe* clarified that courts must "take all relevant circumstances into account," not only the four identified in *Hosanna-Tabor*, when making the minister determination. *Our Lady of Guadalupe*, 140 S. Ct. at 2063. Although a title or description of a job using the word "minister" is not dispositive, the principles respecting church autonomy and avoiding entanglement in religious affairs require deference to a religious institution's "authority to select and control who will minister to the faithful." *See Hosanna-Tabor*, 565 U.S. at 194–95. A court must therefore carefully navigate questions such as the "importance" of an individual's religious functions to avoid entanglement in religious affairs. *See Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 569–70 (7th Cir. 2019) ("Only by subjecting religious doctrine to discovery and, if necessary, jury trial, could the judiciary reject a church's characterization of its own theology and internal organization. Yet it is precisely to avoid such judicial entanglement in, and second-guessing of, religious matters that the Justices established the rule of *Hosanna-Tabor*.").

## II.     The District Court Properly Concluded that Appellant Is a Minister

Courts have concluded that individuals holding a variety of job titles were ministers. *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 178 (2012) ("called teacher"); *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 973 (7th Cir. 2021) ("music director, choir director, and organist"); *Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 569 (7th Cir. 2019) ("organist"); *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 657 (7th Cir. 2018) (per curiam) ("Hebrew teacher"); *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 206 (2d Cir. 2017) ("lay principal"); *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 832 (6th Cir. 2015) ("spiritual director"); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 170 (5th Cir. 2012) ("Music Director"). A guidance counselor similarly may serve a ministerial role.

All of the relevant circumstances support the district court's finding that Appellant was a minister. Appellant served as a Co-Director of Guidance at Roncalli Catholic High School. As the Supreme Court has explained, "[t]he religious education and formation of students is the very reason for the existence of most private religious schools." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020). A guidance counselor at a Catholic institution, particularly one that emphasizes its Catholic mission, certainly engages in the "religious education and formation of students." *Id.* This implicit understanding of the role was made explicit in the Guidance Counselor Ministry Description, which explained that school guidance counselors are "expressly charged with leading students toward Christian maturity

and with teaching the Word of God." ECF No. 141 at 11–12. This Court has rejected an approach to *Hosanna-Tabor* that would "essentially disregard[] what [the] employer (a Roman Catholic School) thought about its own organization and operations." *Sterlinski*, 934 F.3d at 570. And while "a church insist[ing] that *everyone* on its payroll, down to custodians and school-bus drivers, is a minister" could raise concerns about "pretext," Roncalli's claim that its Co-Director of Guidance performs religious functions "is on solid ground." *Id.* at 570–71.

Appellant's own actions confirm her ministerial role at Roncalli. Whether an employee "h[olds] herself out to the community as an ambassador of the . . . faith" weighs into the ministerial determination. *Grussgott*, 882 F.3d at 659. Appellant delivered morning prayer, planned all-school liturgies, and served on an Administrative Council with the mission of shaping the religious environment of the school. ECF No. 141 at 7, 14–15. Even though Appellant also performed duties that could be ascribed to a secular position, including scheduling classes, administering exams, and offering career guidance, the district court properly concluded, in line with church-autonomy principles, that "it would be inappropriate for this court to draw a distinction between secular and religious guidance offered by a guidance counselor at a Catholic school." *Id.* at 16.

At the core of the ministerial exception is its respect for the autonomy of religious institutions to determine for themselves who will lead the faithful without government entanglement in religious affairs, and this case demonstrates that principle. As Co-Director of Guidance and a member of Roncalli High School's Administrative

Council, Appellant participated in shaping and carrying out the Catholic mission of Roncalli High School. The Administrative Council is the main leadership body of Roncalli, deciding matters "relating to the school's mission, specific student needs, and most other day-to-day operations," and the school's Catholic identity and mission was clearly a component of those decisions. *Id.* at 14. Roncalli, as a Catholic school, operates "under the auspices of the Roman Catholic Archdiocese of Indianapolis," pledges to "provide . . . an educational opportunity which seeks to form Christian leaders in body, mind, and spirit," and "supports and otherwise furthers the mission and purposes of" the Archdiocese. *Id.* at 2; ECF No. 114-1 at 2–3.

Because religious institutions have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine," *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952), the ministerial exception squarely applies to Appellant.

## CONCLUSION

The Court should affirm the district court's decision.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

*s/Thomas M. Fisher*
THOMAS M. FISHER
Solicitor General

JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

CLYDE SNIFFEN, JR.
Attorney General
State of Alaska

LESLIE RUTLEDGE
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

LAWRENCE WASDEN
Attorney General
State of Idaho

DEREK SCHMIDT
Attorney General
State of Kansas

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

AUSTIN KNUDSON
Attorney General
State of Montana

DOUG PETERSON
Attorney General
State of Nebraska

JOHN M. O'CONNOR
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

SEAN REYES
Attorney General
State of Utah

PATRICK MORRISEY
Attorney General
State of West Virginia

## CERTIFICATE OF WORD COUNT

I verify that this brief, including footnotes and issues presented, but excluding certificates, contains 1,433 words according to the word-count function of Microsoft Word, the word-processing program used to prepare this brief.

By: *s/ Thomas M. Fisher*
       Thomas M. Fisher
       Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Thomas M. Fisher*
Thomas M. Fisher
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov